FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 21 2005

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DANNY HARPOLE, JACKIE E. STEVENS,
JIMMY R. CADLE & SAMMIE LEWIS                                    PLAINTIFFS

VS.                     CASE NO. 3:00CV00331 JMM
                                 3:02CV00303 JMM
                                 3:03CV00062 JMM[1]
                                 3:04CV00006 JMM

ANN M. VENEMAN, SECRETARY
U.S. DEPARTMENT OF AGRICULTURE                                   DEFENDANT

## ORDER

Pending before the Court is defendant's Motion for Summary Judgment of the above styled consolidated cases and plaintiffs' responses. For the reasons stated below the motion is granted.

Plaintiffs' claims are based upon the selection of Ms. Sandra Metheny in June of 1997 by the Grain Inspection, Packers and Stockyards Administration division ("GIPSA") of the United States Department of Agriculture ("USDA") for a part-time collateral duty which included testing scales of the Norfolk Southern Railway Company ("NS"). Ms. Metheny was subsequently reassigned from a Agricultural Commodity Grader ("ACG") to Industrial Specialist in January of 2000 with no increase in pay. In January of 2001 she received a non-competitive promotion from Industrial Specialist Grade Nine to an Industrial Specialist Grade Eleven which included a pay raise.

---

[1]Plaintiff Jimmy Cadle has settled his lawsuit. A separate Judgment will be entered in his case.

1

Plaintiffs Danny Harpole[2] and Sammie Lewis bring their lawsuits contending that defendant discriminated against them by selecting Ms. Metheny for the collateral duty in violation of (1) Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII") based upon their gender and in retaliation for previous Title VII complaints and (2) the Age Discrimination in Employment Act ("ADEA"). Lewis also makes a claim that defendant violated his Title VII rights by discriminating against him based upon his race.

Plaintiff Jackie Stevens brings his lawsuit contending defendant discriminated against him by selecting Ms. Metheny for the collateral duty in violation of (1) Title VII based upon his gender and in retaliation for previous Title VII complaints; (2) the ADEA; and (3) the American with Disabilities Act ("ADA") based upon a perceived disability.

Defendant contends that (1) Lewis' ADEA claim of age discrimination and his Title VII claim of gender discrimination based upon the assignment of collateral duty in 1997 are time barred and that the Court lacks jurisdiction over his Title VII claim based upon race for failure to exhaust his administrative remedies[3]; (2) Stevens has failed to make a *prima facie* case of disability discrimination; and (3) assuming that plaintiffs have made a *prima facie* case on their Title VII claims based upon gender and retaliation and their ADEA claim based upon age discrimination, they have failed to show that defendant's non-discriminatory reason for its decision was a pretext for discrimination.

---

[2]Harpole's claim made pursuant to the Arkansas Civil Rights Act and his claims against Clyde Steves, Richard Pforr, James Decker and David Orr were dismissed on February 15, 2001 by Order of Chief Judge Susan W. Wright.

[3]Lewis concedes that he failed to exhaust his administrative remedies on his Title VII race claim. This claim is dismissed.

I. *Facts*

In 1996 and 1997 the USDA signed agreements with NS to test railroad track scales on a fee-for-service basis. The 1997 agreement added a significant number of scales resulting in a shortage of qualified USDA employees to make the required tests.

Richard Pforr, Chief of the Weighing and Equipment Branch of GIPSA made the decision to select and train one employee in the Stuttgart Field Office and one employee in the Toledo, Ohio Field Office to test NS track scales as a collateral duty on a part-time basis.

A collateral duty is a duty in addition to the employee's usual and typical duties with no extra pay. The collateral duty itself does not change the employee's position title, occupational series, grade or pay. The collateral duty was not rotated among all employees.

On March 11, 1997, Pforr sent a memo to Clyde Steves, the Stuttgart Field Office Manager, regarding the collateral duty opportunity. The memo stated that "[p]resently there is no promotional possibilities in this work. However, if the quantity of scales continues to increase, a Scales and Weighing Specialist Position might be required." (Def. Ex. #2.) On April 24, 1997 Steves released the memo to all employees at the Stuttgart Field Office. (Def. Ex. #4.)

Eleven employees, including the plaintiffs and Metheny applied for the position. Plaintiffs and Metheny had the same ACG position and the same grades of pay. Methany, a white female born in August of 1962 has been employed by defendant since 1989.

Stevens, a white male born in May of 1951, has been employed by GIPSA since 1977 Harpole, a white male born in July of 1947, has been employed by GIPSA since 1977. Lewis, a black male born in November of 1953, has been employed by GIPSA since 1976.

The list of eleven applicants was given to Steves and contained a notation that Stevens' was limited to light duty. In June of 1997, Stevens was restricted from lifting more than thirty-five pounds and twisting and repetitive bending at the waist.

3

James Decker, a Scales Specialist, came to Stuttgart and Jonesboro to interview the applicants. He returned to Washington, D.C. to report on his efforts to Pforr. Decker eliminated Stevens from contention based upon Stevens' light duty restrictions. Decker told Pforr that he had narrowed the list to four finalist: Harpole, Lynn Luster, Lewis, and Metheny. At the time of the decision, Metheny was the equipment person for the Stuttgart Field Office and tested scales as part of her duties.

At a meeting between Decker and Pforr, Decker recommended Metheny based upon her manner, her experience which included testing grain inspection equipment and grain test scales, her ability to travel, and that she was "very anxious to do the work." Pforr Dep. p- 40-41. Pforr made this same recommendation to Steves who accepted the recommendation and Metheny was selected for the collateral duty. As a result of the decision to assign the collateral duty to Metheny, plaintiffs filed EEO charges against GIPSA.

In 1997 Animal, Plant, Health Inspection Service Classification Specialists Lynn Goodman and Kristen Luurs reviewed the proposed position description of Industrial Specialist for a Grade Nine, but were only able to classify the position as a Grade Seven. Goodman and Luurs are not employed by GIPSA.

An updated position description was made in the fall of 1997 which included a requirement for additional knowledge and responsibilities for train cars in transit resulted in Metheny's position being classified by Luurs as a Grade Nine. With this re-classification, Metheny was able to accept the position without taking a demotion in grade.

In 1998, Pforr informed Clyde Steves, FOM, and David Orr, Director of the Field Management Division that Metheny was utilizing more than 50% of her time performing track scale testing and that her position description should be reviewed to make any changes to accurately reflect her duties.

4

Lewis received his Final Agency Decision on his EEO charge of gender and age discrimination on January 28, 1999.

Metheny received on-the job training in testing automatic bulk weighing systems in May and June of 2000. As a result of an injury to a scale specialist in the New Orleans Field Office, Metheny was given additional assignments.

Metheny requested and received a desk audit in November of 2000 which resulted in a new position description by Luurs which described Metheny's current duties. Based upon this new description, Metheny was promoted non-competitively in January 2001 from Industrial Specialist, Grade Nine, to a Industrial Specialist, Grade Eleven.

In November of 2001, David Shipman, Acting Administrator of GIPSA issued a memorandum to the Stuttgart Field Office, in response to an anonymous letter questioning GIPSA's commitment to equal employment rights, which stated in relevant part:

> Recently, I received an anonymous, undated letter from an employee of the Stuttgart circuit. The letter raised some alarming concerns about the GIPSA Civil Rights Policy that I reaffirmed on October 18, 2001. . . . The EEO Discrimination Complaints Process is governed by strict regulatory guidelines. . . . The insinuation of the attached letter is that the Agency is not in compliance with its own Civil Rights Policy. It appears that there are some employees who believe that the Agency should discipline managers based upon unproven allegations. This practice would be unfair to the managers involved and inconsistent with the process that has been established to address allegations of discrimination. There should be a distinction made between an allegation of discrimination and a finding of discrimination. . . . As Acting Administrator and a Senior Manager in GIPSA, I am proud that, to date, there has never been a finding of discrimination against GIPSA. I recognize that there are workplace problems in the Stuttgart circuit, as well as in other circuits, but the record does not indicate that there are problems with deliberate, blatant discrimination. . . . There are indications that some employees in the Stuttgart circuit are deliberately abusing the EEO process. There are also reports that some employees are encouraging other employees to file bogus complaints in an attempt to discredit the integrity and reputations of managers and the supervisors. I will not tolerate this type of behavior. If any employees are found to be abusing the process with the goal of discrediting others, they will be promptly disciplined, up to and including removal from Federal Service. . . . I am deeply committed to civil rights and equal opportunity in GIPSA. I will not tolerate any behavior from any employee that is contrary to civil rights and equal opportunity. I encourage all employees

who legitimately believe that they have been victims of discrimination to utilize the process established to address employment discrimination, but I will not tolerate those that abuse the process.

(Pl. Lewis' Ex. Q.)

On June 27, 2002, Shipman issued another letter addressed to GIPSA employees at the Stuttgart Field Office stating that "it is GIPSA policy and my personal conviction to treat every employee and customer fairly, equitably, and with dignity and respect. This policy extends to all employees, both in supervisory and nonsupervisory positions. I also want to reaffirm GIPSA's support for good faith participation in the EEO process."

In January of 2004, Lewis filed this instant lawsuit alleging race and gender discrimination based upon Metheny's selection in 1997 and retaliatory discrimination based upon Metheny's 2001 promotion.[4]

In August of 2004, the Equal Employment Opportunity Commission found that the November, 2001, memorandum constituted an unlawful retaliation against plaintiff Lewis because it discouraged him from filing EEO complaints. (Exh. G. Pl. Cadle's Res. To Consolidated Motion for Summary Judgment.)

II. *Discussion*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir. 2001); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably

---

[4] It should be noted that Lewis' lawsuit does not make any claim based upon the November, 2001 memorandum written by Shipman.

6

be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399 (8th Cir. 1995).

Plaintiff's claims for race discrimination are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Tolen v. Ashcroft*, 377 F.3d 879 (8th Cir. 2004). Under this framework, a Title VII plaintiff has the initial burden of establishing a prima facie case of discrimination. *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1119 (8th Cir.1997). If successful, a rebuttable presumption of discrimination arises. *Id.* The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once the employer articulates such a reason, the presumption of discrimination disappears and the plaintiff bears the burden of proving the employer's proffered reason is merely a pretext for discriminatory animus. *Id.* At all times, the plaintiff retains the ultimate burden of proving she was illegally discriminated against. *Ruby v. Springfield R-12 Public Sch. Dist.*, 76 F.3d 909, 912 (8th Cir.1996).

Plaintiffs argue that a modified *McDonnell Douglas* standard is applicable in light of *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101- 02, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). They contend that this modified approach permits them to "survive summary judgment if they have raised a genuine issue of material fact that either the defendant's proffered reason for its action is a pretext for discrimination or that unlawful discrimination was a "motivating factor" in the employer's decision." *Peterson v. Scott County*, 406 F.3d 515, 521 (8th Cir. 2005). The Eighth Circuit holds that this modified approach is not applicable. *Id.*

A. *Title VII Gender Claims*

Lewis' gender discrimination claim based upon Metheny's selection in 1997 for the collateral duty assignment is time barred. He failed to timely file a complaint raising this claim after receiving the Agency's Final Decision Letter in 1999. *See* 42 U.S.C. § 2000e-16(c). Even if Lewis' gender claim was timely filed, it would fail along with Harpole and Stevens' gender claims as plaintiffs have failed to show they suffered an adverse employment action, failed to show that plaintiffs and Metheny were similarly situated, and failed to provide background information to support the suspicion that defendant is that unusual employer who discriminates against the majority.

To establish a *prima facie* case of gender discrimination, plaintiffs must first demonstrate that they (1) are a member of a protected class; (2) were qualified to perform the job; (3) suffered an adverse employment action; and (4) were treated differently from similarly situated females. *Hesse v. Avis Rent A Car System, Inc.*, 394 F.3d 624 (8th Cir. 2005). Because this is a reverse discrimination case, plaintiffs are "expected to show that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Woods v. Perry*, 375 f.3d 671, 673 (quoting *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997)).

Plaintiffs have failed to establish that they have suffered an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. . . . Termination, reduction in pay or benefits, and changes in employment that *significantly* affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an

8

employee's work responsibilities do not." *Sallis v. University of Minn.*, 408 F.3d 470, 477 (8th Cir. 2005) (citing *Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000) (emphasis added).

When Metheny was chosen for the collateral duty over the plaintiffs, they were not denied a promotion, a raise in pay, or any other benefit. There was no change in their employment that would *significantly* affect their future career prospects because the evidence is clear that it was not anticipated that this collateral duty would evolve into a new position.[5] The evidence is that there was a possibility that the collateral duty might evolve into a new position, but it was only that-a possibility.

Likewise plaintiffs have failed to establish that Metheny was similarly situated to them. The evidence is that Metheny was in charge of the equipment at the Field Office, had experience in testing scales and was not working under any limitation. Harpole admits that he did not have any experience in testing scales in 1997, (Pl. Ex. A. "Complainant's Affidavit") and Stevens was working under a thirty-five pound lifting restriction (Def. Ex. 10 to Reply Brief).

Neither have plaintiffs established that the defendant is the unusual employer who discriminates against males. Plaintiffs presented evidence that (1) they and Metheny were similarly qualified making the choice of a female for the collateral duty clearly a preference and that (2) Bill Strickland, a first level supervisor at the Jonesboro Field Office, made derogatory remarks about women and said that he was being pressured into hiring more women. They argue that this is evidence of "background circumstances which support a suspicion that the defendant

---

[5]Contrary to plaintiffs contention, the issue is not whether Metheny's employment was eventually enhanced, but rather whether plaintiffs' employment were harmed by their not being assigned the collateral duty.

9

is that unusual employer who discriminates against the majority." *Id.*

As stated above, the evidence is that Metheny and the plaintiffs were not similarly qualified even though plaintiffs had more seniority. Even if they were similarly qualified, "[a] comparison that reflects that plaintiffs' were similarly qualified as the selected candidate does not raise an inference of gender discrimination." *Woods v. Perry,* 375 F.3d 671 (8th Cir. 2004). Moreover, there is no evidence that Strickland was involved in the decision to assign the collateral duties to Metheny.

Plaintiffs' contention that management's practice of not rotating the field office major collateral duties is in violation of the National Labor-Management Agreement and is evidence of discrimination is without merit. Assuming that the National Labor-Management Agreement requires GIPSA to rotate collateral duties, the lack of rotation would be gender and age-neutral as it affects all employees regardless of their age and gender.

Likewise, plaintiffs' complaint that they requested training for field office collateral duties is unpersuasive. Metheny and plaintiffs were not similarly situated. Metheny was given training commensurate with the duties assigned to her which were different than the duties assigned to plaintiffs.

B. *Title VII Retaliation Claims*

All of the plaintiffs assert Title VII retaliation claims contending that Metheny's promotion to a Grade Eleven in 2001 was in retaliation for plaintiffs previously filing EEOC complaints.

To prevail on this claim of retaliation, plaintiffs must establish a *prima facie* case by establishing that (1) they engaged in statutorily protected conduct, (2) their employer

10

subsequently took adverse action against them, and (3) the adverse action was causally linked to the protected activity. *Sallis v. University of Minn.*, 408 F.3d 470, 477 (8th Cir. 2005).

It is not disputed that plaintiffs have established that they engaged in statutorily protected conduct. Nonetheless, they have failed to establish that Metheny's promotion was an adverse employment action as to them. Metheny's promotion is only relevant to plaintiffs if they were making a failure to promote claim and not a retaliation claim.[6] An employer cannot retaliate against one employee by promoting another employee unless both employees applied for the same promotion.[7]

Metheny's non-competitive promotion resulted from her job being reclassified to a higher level because she was performing the work of a higher level position and was entitled to compensation for it, not because a vacant position opened up for which several candidates were entitled to compete. *See Harris v. U. S. Army*, 119 F.3d 1313, 1316 n.3 (8th Cir. 1997) ("A non-competitive promotion occurs when an employee requests that her job be reclassified to a higher level because the employee believes she is performing the work of a higher level position and should be compensated for it.").

However, assuming that plaintiffs had established that Metheny's promotion after her appointment to collateral duty was an adverse employment action to them, there is no proof that this adverse action was causally linked to their filing of EEO complaints. Plaintiffs filed their

---

[6]Metheny's promotion in January of 2001 could be relevant to plaintiffs' damages if they were able to prevail on their non-selection for the collateral duty in June of 1997.

[7]Plaintiffs' reliance on the Shipman memorandum as evidence of retaliatory discriminatory conduct is misplaced as the memorandum was written almost a year after the event which forms the basis of their retaliatory claims, e.g., Metheny's promotion.

EEO complaints three years before Metheny's promotion which is the retaliatory act upon which plaintiffs base their claim. The lapse of time between the protected activity and the alleged retaliatory act is too long for the incidents to be temporally and therefore causally related. *See Henderson v. Ford Motor Co.*, 403 F.3d 1026 (8th Cir. 2005).

Even if plaintiffs had established a *prima facie* case, they have failed to provide any proof of pretext regarding defendant's stated nondiscrimitory reason for the promotion. Defendant states that Methany was promoted based upon an accretion of duties. The undisputed evidence is that her part-time collateral duty evolved into a full-time position and that the subsequent promotion was based upon additional duties.

C. *ADEA Claims*

To establish a *prima facie* case of age discrimination under the ADEA for a failure to select plaintiffs for a collateral duty, plaintiffs must demonstrate that (1) they were in the protected age group (over 40), (2) they were otherwise qualified for the position, (3) they were not selected, and (4) age was a factor in the employer's decision not to select them. *Chambers v. Metropolitan Property and Cas. Ins. Co.*, 351 F.3d 848 (8th Cir. 2003).

Assuming without deciding that plaintiffs have proven a *prima facie* case of age discrimination, they have failed to establish that defendant's stated reason for assigning the collateral duties to Metheny were a pretext for discrimination based upon their gender.

Defendant's stated nondiscriminatory reason for assigning the collateral duties to Metheny was because she met all the requirements, that is that she had a mechanical background, had an interest in the work, was willing to travel, was a self-starter, and had scale testing experience. Metheny was the only applicant who had all of these qualifications. In fact, she was

12

the person in the Stuttgart Field Office who was responsible for testing scales and other equipment.

In addition, the differences in the ages of Metheny and plaintiffs Lewis and Stevens is not that significant. She is only nine years younger than Lewis and 11 years younger than Stevens. *See Girten v. McRentals, Inc.*, 337 F.3d 979 (8th Cir. 2003) (nine-year age difference in age may not be sufficient to infer age discrimination).

### D. *ADA Claims*

To establish a *prima facie* case of discrimination based upon a disability in violation of the ADA, plaintiff Stevens must show that (1) he had a disability within the meaning of the ADA, (2) that he was qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. *Epps v. City of Pine Lawn*, 353 F.3d 588 (8th Cir. 2003).

Stevens contends that defendant "regarded" him as being disabled based upon his light duty restriction and discriminated against him based upon this assumption. *See Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005) ("Individuals who are regarded as having a disability, although not actually disabled, are protected by the ADA.").

An employee can be "regarded" as disabled if "(1) the employer mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or (2) the employer mistakenly believes that an *actual* impairment substantially limits one or more major life activity. *Id.*

"'Substantially limited' means 'unable to perform' or 'significantly restricted as the condition, manner or duration under which' of performing a major life activity. 29 C.F.R. §

13

1630.2(j)(1)(i)-(ii). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.*

The evidence is that defendant did not consider Stevens unable to work, rather they considered him unable to work one particular job, e.g., the duties associated with testing scales.

"The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* (Citing 29 C.F.R. 1630.2(j)(3)(i)). The fact that Stevens was unable to lift more than thirty-five pounds does not amount to a disability, *see Id.* ("A lifting restriction, without more, is not a disability."). The ADA would not apply to Stevens' case.

III. *Conclusion*

Defendant's motion for summary judgment is granted (# 82) and plaintiffs Harpole's, Stevens', and Lewis' complaints are dismissed. Judgment will be entered accordingly.

IT IS SO ORDERED this 21 day of July, 2005.

James M. Moody
United States District Judge